**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

F I L E D

NOV 2 5 2015

CLERK'S OFFICE
DETROIT

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Civil No. 2:15-cv-13124-GER-MKM |
| JOHN DOE, subscriber assigned to IP | ) | Hon. Gerald E. Rosen |
| address 73.18.192.96 | ) | Magistrate Judge Mona K. Majzoub |
| *Defendant.* | ) | |
| | ) | |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO QUASH**

I, defendant John Doe, subscriber assigned to IP address 73.18.192.96, file this Reply to Plaintiff's Opposition to Motion to Quash. Plaintiff's Opposition does not properly answer the questions raised in the Defendant's Motion to Quash and still fails to show "good cause" for the expedited discovery. Therefore, Defendant respectfully requests that this Court enter an Order Granting the Motion to Quash or any other and further relief that the Court deems just and proper.

1

## ARGUMENT

### I. The Court has Discretion to Reconsider its Orders

#### 1. <u>Rule 26</u>

Plaintiff applies the wrong legal standard, Rule 45, to claim that failing to show "good cause" for the issuance of the subpoena is not a recognized basis to quash. *See* CM/ECF No. 8 at p. 8. However, Defendant's arguments on the "good cause" inquiry is based on Rule 26. *See* CM/ECF No. 6 at ¶22. Furthermore, Plaintiff requested permission to file a motion pursuant to Fed.R.Civ.P. 26(d)(1), seeking leave to serve a third party subpoena prior to a rule 26(f) conference to learn the Defendant's identity. *See* CM/ECF No. 4 at p.7-8. Also, this Court issued the order based on Rule 26. Therefore, any analysis as to whether good cause existed for the subpoena that has been issued must be done so under Rule 26.

Rule 26(b) provides courts with the authority to issue such an order for "good cause." And it is undisputed that a district court retains the power to modify or lift protective orders that it has entered. See Gambale v. Deutsche Bank AG, 227 F3d 133, 141 (2d Cir. 2004).

### II. Plaintiff Failed to Show "Good Cause"

#### 1. <u>Plaintiff Failed in Showing of Prima Facie Claim</u>

#### (1) Certificate of Copyright Registration is not Irrefutable Presumption of Copyright Validity

Plaintiff claims its ownership of a valid copyright relying solely on the presumption of validity that attaches to a certificate of copyright registration. *See* CM/ECF No. 8 at p. 10. Such a certificate constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate. However, a certificate of registration creates no irrefutable presumption of copyright validity. *Durham*

2

*Industries, Inc. v. Tomy Corp.*, 630 F. 2d 905 (2d Cir. 1980); *Tradescape.com v. Shivaram*, 77 F.Supp.2d 408, 414 (S.D.N.Y. 1999); *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F.Supp.2d 223, 229 (S.D.N.Y. 2012).

Judge Alvin K. Hellerstein of S.D.N.Y. casted a question on the eligibility of copyright protection for obscene motion pictures, citing *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171(S.D.N.Y. 2012) (if the Motion Picture is considered obscene, it may not be eligible for copyright protection.") *Malibu Media, LLC v. John Doe Subscriber assigned IP Address 66.108.67.10*, 1:15-cv-04369-AKH, ECF No. 10 (S.D.N.Y. July 06, 2015). Two judges in S.D.N.Y are seriously questioning the eligibility of the copyright protection for obscene motion pictures.


### (2) Casting Unnecessarily Wide Net

Plaintiff argues that the 70% chance that Defendant is the infringer constitutes concrete prima facie case of copyright infringement. *See* CM/ECF No.8 at p. 12.  However, many courts have found that the 30% probability of false identification is casting unnecessarily wide net considering the risks of coercing innocent defendants into settling. *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012)  (This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading pornography); *Malibu Media, LLC v. John Doe Subscriber assigned IP Address 66.108.67.10*, 1:15-cv-04369-AKH, ECF Doc. 10 (S.D.N.Y. July 06, 2015)  (the risk of misidentification is great in a world with ubiquitous Wi-Fi, and given courts' concerns that these sorts of allegations are likely to coerce even innocent defendants into settling, the risk of misidentification is important to protect against.)

**(3) BitTorrent File Pieces are Worthless**

Plaintiff argues that the evidence that Defendant either uploaded, downloaded, or even possessed a

complete copyrighted video file is not required to properly plead a prima facie claim of infringement. *See*

CM/ECF No. 8 at p. 13. However, Judge Alvin K. Hellerstein found that the evidence of a complete

copyrighted video file is required because BitTorrent file pieces are worthless. *Malibu Media, LLC v.*

*John Doe Subscriber assigned IP Address 66.108.67.10*, 1:15-cv-04369-AKH, ECF Doc. 10 (S.D.N.Y.

July 06, 2015).

> [i]ndividual BitTorrent file pieces are worthless — by themselves they can never
> be reconstructed into the original file. Nor do the individual file pieces resemble
> a partial movie clip: if a 10-minute movie file was split into 60 pieces by
> BitTorrent, the resulting pieces are not playable 10-second clips of the movie. If
> it is the case that a Doe Defendant logged onto the BitTorrent swarm,
> downloaded and then uploaded a single piece to the IPP server, and then logged
> off, all he has done is transmit an unusable fragment of the copyrighted work.
> Without the remaining pieces, this Doe Defendant cannot do anything with this
> scrap of data. …[t]he Court notes that Malibu's case is weak if all it can prove is
> that the Doe Defendants transmitted only part of all the BitTorrent pieces of the
> copyrighted work.

*Malibu Media, LLC v. John Does 1-10*, No. 12-cv-3623, 2012 WL 5382304, at *3 (C.D. Cal. June 27,

2012).

> What is more, downloading data via the BitTorrent protocol is not like stealing
> candy.  Stealing a piece of a chocolate bar, however small, is still theft; but
> copying an encrypted, unusable piece of a video file via the BitTorrent protocol
> may not be copyright infringement. In the former case, some chocolate was
> taken; in the latter case, an encrypted, unusable chunk of zeroes and ones. And as
> part of its prima facie copyright claim, Plaintiff must show that Defendants
> copied the copyrighted work. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S.
> 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). If a download was not
> completed, Plaintiff's lawsuit may be deemed frivolous.

*Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333, 2013 U.S. Dist. LEXIS 17693 (C.D. Cal. Feb. 7, 2013)

4

Plaintiff's argument that someone who starts downloading a movie intends to watch the movie, and thus the person will likely download the full movie is only a speculation and not a valid argument.

> The first problem is how Plaintiff concluded that the Defendants actually downloaded the entire copyrighted video, when all Plaintiff has as evidence is a "snapshot observation." This snapshot allegedly shows that the Defendants were downloading the copyrighted work-at least at that moment in time. But downloading a large file like a video takes time; and depending on a user's Internet-connection speed, it may take a long time. In fact, it may take so long that the user may have terminated the download. The user may have also terminated the download for other reasons. To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for a candy from a display does not automatically mean he stole it. No court would allow a lawsuit to be filed based on that amount of evidence.

*Id.*

### (4) Plaintiff's Evidence Fall Below the Quantitative Threshold of Substantial Similarity

Even if we assume that Plaintiff is not required to prove that Defendant downloaded or distributed a complete file, Plaintiff should prove that the piece of file is not "so trivial as to fall below the quantitative threshold of substantial similarity." *See* CM/ECF No. 8 at p. 12 (citing *Burgin v. Nat'l Football League*, No. 13-civ-8166, 2014 WL 176011, *2 (S.D.N.Y. April 30, 2014)). To determine whether it falls below the quantitative threshold of substantial similarity, courts often look to the amount of the copyrighted work that was copied, as well as (in cases involving visual works) the observability of the copyrighted work in the allegedly infringing work. *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998). According to Plaintiff's complaint, Plaintiff argues that IPP International UG downloaded from Defendant one or more bits of each of the digital movie files. *See* CM/ECF No. 1 at ¶19. In the plaintiff's motion, it also incorrectly stated that "Indeed, numerous defense experts have received the PCAPs and have never challenged them on the basis that they do not show an infringing transaction." CM/ECF 8 at p. 6. Yet, in case *Malibu Media, LLC v. John Doe subscriber assigned IP*

5

*address 98.249.146.169*, No. 0:14-cv-61957 (F.L.S.D. August 26, 2014), the defendant's expert witness

questioned the credibility and reliability of the only evidence in the plaintiff's case.

> I examined the PCAPs provided by Plaintiff and compared them with the video files provided by Plaintiff. When I looked at them, for example, the PCAP file for file hash No. 91D22A6F66495928D68FE6EFE63FC676FD6AC763_1606 (file name 98.249.146.169_91D22A6F66495928D68FE6EFE63FC676FD6AC763_1606.pcap), determined that the size of the allegedly downloaded bits recorded in that PCAP amounted to only 67KB, which is substantially smaller than the size of the full video, which was 441.2MB. The size of the video for that file is about 6500 times larger, than the size of the PCAP (file name "X-Art- Hot Orgasm- Scarlet [1080p].mp4" which was compressed with a file name 91D22A6F66495928D68FE6EFE63FC676FD6AC763.tar).

> If the entire video file had been downloaded and captured, the size of the PCAP would have been at least slightly larger than the video file because it would contain the same data.

The defendant's expert witness determined that the PCAP that Malibu Media had provided as evidence

was only 67 kilobytes. The full size of the plaintiff's video was 441.2 megabytes, which translates to

451,789 kilobytes. The video in question had a full runtime of 9 minutes and 49 seconds, which would

relate to 767 kilobytes per second. The evidence provided by the plaintiff in the nearly identical case

doesn't even equal 1/10[th] of one second of the video in question and amounts to 0.015% of the original

file.

The defendant's expert witness goes on to say:

> The data in the PCAPs presented appears "filtered." In other words, the data does not appear to be complete. For example, the PCAPs completely lack any UDP (User Datagram Protocol) data. The BitTorrent client that was allegedly used by the downloader is Transmission, version 2.42. Transmission began implementing UDP support in version 2.3. Transmission 2.42 definitely has UDP available; therefore, it should have shown up in the PCAP. The complete absence of UDP traffic in the PCAP log leads me to believe that some of the evidence has been deleted or removed.

> The fact that the data was filtered makes it appear that Plaintiff may be hiding something. If Plaintiff had supplied complete data, I would have been able to determine whether, for example, Plaintiff's investigator had "seeded" the files. Therefore, the lack of data makes it inconclusive, yet possible, that Plaintiff seeded the files. It also makes the integrity of the files questionable.

6

This statement by the defendant's expert witness should give the court the most pause in questioning the plaintiff's litigation tactics and the reliability of the evidence provided. Furthermore, the defendant's expert witness goes on to describe other inconsistencies in the evidence supplied by the plaintiff:

> I examined the "reports" Plaintiff served along with the PCAP files. The reports says they were created by Patrick Paige. I noticed differences between the reports and the data in the PCAPs. The report for file hash, 91D22A6F66495928D68FE6EFE63FC676FD6AC763, for example, contains only 61 entries, whereas the PCAP contains 181 entries. Likewise, the other reports also failed to completely match the corresponding PCAP. Therefore, the reports are incomplete.

And also that:

> Along with the PCAPs, I examined the "MySQL" PDF attached as Exhibit "A" to Michael Patzer's declaration (Page 4 at ¶ 21 ). However, it too appears to be incomplete, as well as misleading. The MySQL report contains time stamps that do not exist in the PCAP. For example, for file hash number 91D22A6F66495928D68FE6EFE63FC676FD6AC763, the MySQL includes only six time stamps […]; only one of these matches to an entry in the corresponding PCAP […]

> The other five of the six time stamps were not in the PCAP. Therefore I concluded that the data in the MySQL log does not match the PCAP, and the PCAP does not match the MySQL log.

Given the seriously damaging nature of the defendant's expert witness to the plaintiff's evidence, the plaintiff moved to have the defendant's expert witness report excluded from the case on September 17, 2015, but was denied by the judge on September 21, 2015. A mere 8 weeks after the defendant's expert report was filed, and faced with the prospect of serious potential damage to the plaintiff's credibility, the plaintiff dismissed the case with prejudice on November 6, 2015.

The pieces of any file provided as evidence by the Plaintiff will be less than few hundred milliseconds. Such an infinitesimal portion cannot be said to contain any substantive content.

> Here we determine as a matter of law that there was no improper appropriation
> because no reasonable jury, properly instructed, could find that the data
> snippet bears a "substantial similarity" to Malibu Media's copyrighted work. We
> conclude that, even if Doe copied the preview, his copying would not be an
> improper appropriation violating Malibu Media's copyright of the entire film.

*Malibu Media, LLC v. Doe*, 82 F.Supp.3d 650, 658 (E.D. Pa. 2015).

Therefore, Plaintiff failed to prove that the file pieces are not so trivial as to fall below the
quantitative threshold of substantial similarity.

### 2. Plaintiff's Claim that There is No Other Way to Identify the Defendant is Inadequate

Plaintiff's argument that there is no alternative means obtaining Defendant's true identity is still
inadequate. The argument in Plaintiff's Opposition is merely a lengthy version of its argument in the
Memorandum in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena. *See* CM/ECF
No. 4 at p. 10. The only support for the Plaintiff's Motion was from the declaration of Patrick Paige, who,
as Magistrate Judge Kevin Nathaniel Fox found in a different case, lacks personal knowledge of the
methodology used by ISPs to match the IP address with its registrant. *Malibu Media, LLC v. John Doe*
*subscriber assigned IP address 207.38.208.137*, 15-cv-1883, CM/ECF No. 16 (S.D.N.Y. Apr.10, 2015).
The same declaration was submitted to Judge Alvin K. Hellerstein in support of the same argument and
found inadequate. *See Malibu Media, LLC v. John Doe Subscriber assigned IP Address 66.108.67.10*,
1:15-cv-04369-AKH, CM/ECF No. 10 (S.D.N.Y. July 06, 2015). Here, the declaration of Patrick Paige
submitted in support of Plaintiff's Motion is the same declaration that was found inadequate two times in
S.D.N.Y. *See* CM/ECF No. 4-3.  Plaintiff submitted a new declaration from the same individual, Patrick
Paige, to support Plaintiff's Opposition. However, in the new declaration, he does not explain the
methodology used by ISPs to match the IP address with its registrant. *See* CM/EFC No. 8-1. Therefore,
Plaintiff's claim that there is no alternative means obtaining Defendant's true identity is still inadequate.

8

### III. Plaintiff's Proven Track Record of Abusing Court System

Plaintiff claims that it is dedicated to only pursuing liable infringers and it settles and litigates in good faith. *See* CM/EFC No.8 at p. 16-18. However, Plaintiff's cases show different stories. As noted by Plaintiff, Plaintiff has filed over 4,000 cases. *Id*. at p. 20. Out of over 4,000 cases, "Plaintiff has taken well over 300 cases deep into discovery and is heavily litigating at least a dozen cases that may go to trial within the next year or two." *Id*. at p. 17. None of Plaintiff's over 4,000 cases have been tried before a jury.

Then what happened to Plaintiff's cases? Most of the case were settled or voluntarily dismissed before a trial. From Plaintiff's over 4,000 cases, we can observe a pattern of court system abuse. Following pattern is cited from *Malibu Media, LLC. V. John Doe subscriber assigned IP address 65.189.10.120*, No. 1:14-cv-00493-TSB, CM/ECF No. 40. (S.D. Ohio August 27, 2015):

> 1. Use a sliver of evidence as the basis for suit and move for early discovery.
> [At which point, defendant is notified by his ISP of suit.]
>
> 2. Wait for defendant or his counsel to initiate contact and inquire about a settlement.
> [Defendant is then notified of the statutory maximum and Plaintiff is willing to settle for the minimum. Defendant is now faced with three choices: 1) financial ruin if he loses; 2) financial ruin and humiliation if he litigates; 3) fight.]
>
> 3. If no settlement agreement is reached, amend the complaint to name the defendant.
> [Defendant, regardless of guilt, must now contend with the stress that friends, family or employers may stumble across this public filing]
>
> 4. Move to extend the time to complete service repeatedly.
> [This serves two purposes in hopes of facilitating settlement: 1) to hang the suit over defendant's head; and 2) to draw out defendant's litigation expenses.]
>
> 5. Serve the defendant. If the defendant does not default, move on to discovery.

9

6. Discovery tactics include: 1) move to extend the time to complete expert reports repeatedly; 2) depose neighbors.
[Again, the extensions are to draw out the litigation expenses. The depositions are to publicly shame a defendant.][1]

7. Voluntarily dismiss the matter at any point before trial.

The goal of this playbook is not to determine guilt, but to force a settlement. Plaintiff's cases in M.I.E.D. and M.I.W.D. are also following this pattern. A closer review of the 196 Malibu Media cases filed within the last 2 years (11/1/2013 – 11/16/2015) further show this abuse. *See* Exhibit A.

76% of the cases have been voluntarily dismissed by the Plaintiff before discovery has even commenced, the vast majority of which never even named the Defendant in the suit. 15% of the cases were settled with the Defendant prior to even naming the Defendant in the complaint. Only 3 out of 196 cases (1.5% of the total) moved into the discovery phase of litigation. Only 12 cases (6% of the total) that the Plaintiff has commenced even remain active at this point in time.

## VI. CONCLUSION

Plaintiff has failed to show "good cause" for the expedited discovery because it couldn't establish a prima facie claim and its claim that there is no alternative means of obtaining the desired information was inadequate. Plaintiff also has a proven record of systematic abuse of the court system to leverage settlements from defendants without valid claims and intent to bring to trial.

---

[1] In a case in S.D.N.Y., Plaintiff tried to subpoena defendant's neighbors or significant other when there was no evidence of infringement on defendant's part. Issuing a protective order, Judge Kathrine B. Forrest of S.D.N.Y. stated that "Plaintiff may not subpoena neighbors or defendant's significant other based on the current record. As to the neighbors, Plaintiff would be engaged on a fishing expedition and/or harassment of defendant (by way of causing embarrassment/humiliation). The issue in this case is whether this defendant downloaded plaintiff's works -- not anyone else living in the apartments nearby." *See Malibu Media, LLC v. John Doe*, 1:14-cv-10155-KBF CM/EFC No. 36 (S.D.N.Y. September 14, 2015)

For the foregoing reasons, Defendant respectfully requests that this Court enter an Order Granting the Motion to Quash or any other and further relief that the Court deems just and proper.

Dated: November 23, 2015

Respectfully submitted,

_John Doe_

John Doe, subscriber assigned
to IP address 73.18.192.96
john.doe.73.18.192.96@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2015, I served a copy of the foregoing document, via US Mail, on:

> Paul J. Nicoletti
> Nicoletti Law, PLC
> 33717 Woodward Avenue, Suite 433
> Birmingham, MI 48009

Dated: October 23, 2015

Respectfully submitted,

*John Doe*

John Doe, subscriber assigned

to IP address 73.18.192.96

john.doe.73.18.192.96@gmail.com

# Exhibit A

The following is a list of Malibu Media cases in Michigan (both Eastern and Western District) for the last two years between the dates of 11/1/2013 and 11/16/2015. The total number of cases found comes to 196, one if which is this case.

## <u>Cases voluntarily dismissed without prejudice by Plaintiff prior to Discovery</u>

1:14-cv-00242
1:14-cv-00243
1:14-cv-00244-RJJ
1:14-cv-00245-RJJ
1:14-cv-00246
1:14-cv-00247
1:14-cv-00248
1:14-cv-00251
1:14-cv-00253
1:14-cv-00255
1:14-cv-00256
1:14-cv-00258
1:14-cv-00260-RJJ
1:14-cv-00261
1:14-cv-00262
1:14-cv-00263
1:14-cv-00265
1:14-cv-00268
1:14-cv-00357-RJJ
1:14-cv-00358
1:14-cv-00359-RJJ
1:14-cv-00360-RJJ
1:14-cv-00361-RJJ
1:14-cv-00362
1:14-cv-00364
1:14-cv-00365-RJJ
1:14-cv-00373
1:14-cv-00374
1:14-cv-00376
1:14-cv-00377
1:14-cv-00378-RJJ
1:14-cv-00379-RJJ
1:14-cv-00480
1:14-cv-00481

1:14-cv-00482
1:14-cv-00483
1:14-cv-00484-RJJ
1:14-cv-00486
1:14-cv-00487
1:14-cv-00488
1:14-cv-00489
1:14-cv-00490-RJJ
2:14-cv-12424-PDB-MJH
2:14-cv-12415-SJM-DRG
2:14-cv-12412-LVP-MJH
2:14-cv-12433-GCS-MJH
2:14-cv-12430-NGE-MKM
2:14-cv-12435-MOB-MKM
2:14-cv-12434-RHC-MKM
2:14-cv-12475-DML-RSW
2:14-cv-12474-PJD-MJH
2:14-cv-12470-BAF-RSW
2:14-cv-12468-AC-RSW
2:14-cv-12465-TGB-DRG
2:14-cv-12464-MFL-DRG
2:14-cv-12462-GAD-MJH
2:14-cv-12461-RHC-MKM
2:14-cv-12459-BAF-DRG
2:14-cv-12458-JCO-PJK
2:14-cv-14221-PDB-DRG
2:14-cv-14231-MAG-DRG
2:14-cv-14238-GER-DRG
2:14-cv-14245-GAD-DRG
2:14-cv-14247-MAG-RSW
2:14-cv-14248-TGB-DRG
2:14-cv-14315-VAR-RSW
2:14-cv-14316-SFC-RSW
2:14-cv-14317-AJT-MKM
2:14-cv-14318-BAF-RSW
2:14-cv-14321-DPH-MKM
2:14-cv-14323-GAD-MJH
2:15-cv-10267-MFL-APP
2:15-cv-10275
2:15-cv-10276-SFC-DRG
2:15-cv-10277-MOB-RSW
2:15-cv-10278-JEL-RSW
2:15-cv-10280-NGE-RSW
2:15-cv-10281-SJM-EAS
2:15-cv-10283-MFL-DRG
2:15-cv-10284-DPH-APP

2:15-cv-10286-AC-EAS
2:15-cv-10304-GCS-MKM
2:15-cv-10306-DML-RSW
2:15-cv-10307-AC-DRG
2:15-cv-10308-AC-DRG
2:15-cv-10310-MAG-EAS
2:15-cv-10316-LVP-APP
2:15-cv-10317-LJM-MKM
2:15-cv-10319-DML-MJH
4:15-cv-10328-TGB-DRG
2:15-cv-11140-RHC-DRG
2:15-cv-11141-LJM-MKM
2:15-cv-11143-LJM-DRG
2:15-cv-11145-AC-DRG
2:15-cv-11146-BAF-MKM
2:15-cv-11147-LJM-RSW
2:15-cv-11148-RHC-EAS
2:15-cv-11149-DPH-EAS
2:15-cv-11152-SFC-APP
2:15-cv-11178-MAG-RSW
2:15-cv-11180-AC-RSW
2:15-cv-11182-JEL-MKM
2:15-cv-11183-SFC-APP
2:15-cv-11185-JCO-DRG
2:15-cv-11186-GER-APP
2:15-cv-11187-MOB-MJH
2:15-cv-11188-MOB-RSW
2:15-cv-11189-GCS-APP
2:15-cv-11190-RHC-RSW
2:15-cv-11191-SFC-MKM
2:15-cv-11192-BAF-MKM
2:15-cv-11494-SFC-EAS
2:15-cv-11495-LVP-APP
2:15-cv-11496-VAR-MKM
2:15-cv-11497-TGB-APP
2:15-cv-11501-GCS-APP
2:15-cv-11503-PDB-MKM
2:15-cv-11504-NGE-MKM
2:15-cv-11505-VAR-EAS
2:15-cv-11506-AC-DRG
2:15-cv-12085-BAF-APP
2:15-cv-12087-NGE-RSW
2:15-cv-12088-AC-EAS
2:15-cv-12089-TGB-DRG
2:15-cv-12090-SJM-RSW
2:15-cv-12092-RHC-MJH

3

2:15-cv-12096-LVP-DRG
2:15-cv-12099
2:15-cv-12273-TGB-RSW
2:15-cv-12276-GCS-RSW
2:15-cv-12279-GAD-MJH
2:15-cv-12280-DML-DRG
2:15-cv-12282-GAD-RSW
2:15-cv-12283-MAG-MKM
2:15-cv-12285-NGE-EAS
2:15-cv-12289-LVP-MKM
2:15-cv-12290-LJM-MJH
2:15-cv-12291-MAG-APP
2:15-cv-12292-JEL-EAS
2:15-cv-12293-TGB-EAS
2:15-cv-13118-DML-MJH
2:15-cv-13121-RHC-EAS

**Total Cases: 143   (73% of total)**


## Cases voluntarily dismissed with prejudice by Plaintiff prior to discovery

2:14-cv-12473-SJM-DRG
2:14-cv-12471-JCO-RSW
2:15-cv-10298-GER-APP
2:15-cv-10312-DPH-MKM
2:15-cv-11181-PDB-MKM
2:14-cv-14222-LJM-MKM

**Total Cases: 6   (3% of total)**


## Cases voluntarily dismissed with prejudice by Plaintiff during discovery

2:14-cv-12432-RHC-RSW

**Total Cases: 1   (0.5% of total)**

4

## Cases that have been granted a Third-Party Subpoena, but have not served a defendant in 90 days and should be dismissed for Failure to Serve Complaint FRCP 4(m)

2:15-cv-11179-SJM-MKM
2:15-cv-12281-LJM-DRG

**Total Cases:  2   (1% of total)**


## Active Cases with an Order to Show Cause for Failure to Prosecute

2:15-cv-11500-SJM-RSW

**Total Cases:  1   (0.5% of total)**


## Active Cases that have been granted a Third-Party Subpoena prior to Rule 26(f) Conference

2:15-cv-13117-AJT-DRG
2:15-cv-13120-GAD-DRG

**Total Cases:  2   (1% of total)**


## Active Cases that have been granted a Third-Party Subpoena prior to Rule 26(f) Conference and have an outstanding Motion to Quash Subpoena

5:15-cv-13126-JCO-EAS
2:15-cv-13124-GER-MKM (this case)

**Total Cases:  2   (1% of total)**


## Active Cases that have not yet moved into discovery

2:15-cv-10315-BAF-MKM
2:15-cv-12094-AJT-MKM
2:15-cv-12274-AJT-RSW
2:15-cv-12287-AJT-APP

**Total Cases:  4   (2% of total)**

## Active Cases currently in discovery

2:15-cv-10285-LJM-DRG

**Total Cases: 1   (0.5% of total)**


## Cases that were settled prior to naming the Plaintiff in the complaint

1:14-cv-00241
2:14-cv-12431-JEL-DRG
2:14-cv-12457-MFL-MJH
2:14-cv-14220-SJM-MJH
2:14-cv-14237-LPZ-MJH
2:15-cv-10274-NGE-EAS
2:15-cv-10279-DPH-MJH
2:15-cv-10282-GCS-APP
2:15-cv-10299-VAR-APP
2:15-cv-10327
2:15-cv-11138-BAF-RSW
2:15-cv-11139-JCO-RSW
2:15-cv-11142-RHC-DRG
2:15-cv-11144-GER-RSW
2:15-cv-11150-RHC-MKM
2:15-cv-11184-AJT-EAS
2:15-cv-11498-LJM-RSW
2:15-cv-11499-BAF-MJH
2:15-cv-11502-TGB-APP
2:15-cv-12098-AJT-MKM
2:15-cv-12100-JCO-RSW
2:15-cv-12102-GCS-MJH
2:15-cv-12103-MFL-EAS
2:15-cv-12278-GAD-EAS
2:15-cv-12284-PDB-RSW
2:15-cv-12288-LJM-APP
2:15-cv-13119-GAD-APP
2:15-cv-13122-VAR-MJH
2:15-cv-13123-DPH-MKM
2:15-cv-13125-AC-MJH

**Total Cases: 30   (15% of total)**

## Cases that were settled during discovery

2:14-cv-12409-GCS-MKM

**Total Cases:  1   (0.5% of total)**


## Cases granted Default Judgement against Defendant due to failure to respond to complaint

1:14-cv-00250-RJJ
2:14-cv-12460-AC-DRG
2:15-cv-10305-RHC-RSW
2:15-cv-10318-AJT-DRG

**Total Cases:  4   (2% of total)**

FILED

NOV 25 2015

CLERK'S OFFICE
DETROIT



U.S. POSTAGE
BLOOMFIELD HILLS, MI
48302
NOV 24 15
AMOUNT
**$1.64**
R2303S103849-03

United States District Court for the Eastern District of Michigan
Clerk's Office

Theodore Levin U.S. Courthouse

231 W. Lafayette Blvd. Room 564

Detroit, MI 48226